UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| NANN DOTY, | ) |
|       Plaintiff, | ) |
|       v. | ) CAUSE NO: 3:03-CV-10 PS |
| ST. JOSEPH COUNTY, ST. JOSEPH COUNTY BOARD OF COUNTY COMMISSIONERS, ST. JOSEPH COUNTY AUDITOR OFFICE and JOSEPH NAGY, in his Individual and Official Capacity as St. Joseph County Auditor, | ) |
|       Defendants. | ) |

**OPINION AND ORDER**

Plaintiff Nann Doty was terminated from her position as a deed transfer clerk in the St. Joseph County Auditor's Office on April 16, 2002, after she had filed two EEOC charges alleging race discrimination and retaliation, respectively. Doty's termination occurred only days after her sister visited the Auditor's Office and threatened to bring a lawsuit on her sister's behalf alleging discrimination. This matter is currently before the Court on Defendants' Motion for Summary Judgment [Doc. 21].

In her Response, Plaintiff Doty concedes that there are no genuine issues of material fact with respect to her hostile environment claim brought under Title VII, 28 U.S.C. § 1981, and 28 U.S.C. § 1983 and her due process claim. Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's racial harassment and due process claims are hereby granted without

further discussion.[1]   As for her retaliation and race discrimination claims, the Defendants' Motion for Summary Judgment is denied for the reasons that follow.

## BACKGROUND

Nann Doty , an African- American woman, was hired by the St. Joseph County Treasurer's Office in 1994.  In October 1997, Doty was transferred into the St. Joseph County Auditor's Office as a deed transfer clerk.  For three years, Doty reported to John Carlson.  From the record currently before the Court, it does not appear that Doty had any disciplinary issues or issues with her work performance during this time.

In 2000, Carolyn Haluda, a Caucasian female, became Doty's supervisor.  Sometime shortly after she became supervisor, Haluda recommended that her friend, Melinda Stopczynski, a Caucasian female, be hired.  Stopczynski was hired as a deed transfer clerk and for approximately one year performed the same duties as Doty.  However, former St. Joseph County Auditor, Joseph Nagy, admits that Stopczynski was hired at a higher pay rate than Doty.  Somehow, Doty found this information out.  On August 20, 2001, both Doty and Stopczynski had memorandums placed in their files concerning personnel issues and issues regarding Haluda.  On December 20, 2001, Doty filed her first EEOC charge alleging discrimination on the basis of race and complaining about, among other things, the fact that she was being paid at a lower hourly rate than Stopczynski.

A couple of months later, on February 10, 2002, Haluda provided a narrative to Auditor Nagy regarding the "Nann situation."  The narrative described issues that Haluda had with

---

[1] Additionally, Plaintiff admits that she is only pursuing a retaliation claim and a race discrimination claim against the Defendants.  She is not pursuing separate claims for a failure to promote or for wage discrimination.

Doty's job performance, but also with Doty herself stating that she believes that "Nann enjoys starting problems" and that "she enjoys even more… watching the chaos that follows.  It's kind of a head game she plays."  (Nagy Dep. at Ex. 11.)  Clearly, Haluda had issues with Doty.  The next day, February 11, 2002, Nagy suspended Doty for five days without pay for poor work performance.  However, before Doty served the entire suspension, she was called and told to report back to work.  According to Nagy, Doty was called back in fairness that he should at least try to work with her.  On March 7, 2002, Doty filed her second EEOC charge alleging that she was suspended in retaliation for the filing of her first EEOC charge.

On April 8, 2002, Haluda supplied another narrative to Nagy regarding Doty's failure to keep up with the filing of the deeds on a daily basis.  That same day, Nagy drafted a memo to Doty regarding her falling behind in her work.  On April 10, 2002, Kerry Davis (Doty's sister) came to the Auditor's office and asked Haluda for the correct spelling of her name and the name of her lawyer.  (Nagy Dep. at Ex. 17.)  Davis went on to say that Haluda would be hearing from her (Doty's) lawyer and that they were suing Haluda for defamation of character and discrimination.  (*Id.*)  The evidence is undisputed that Davis did not make any physical threats, did not swear, did not call out a derogatory name, and did not touch anyone.  The only thing she did was ask people for their names and threaten to bring a lawsuit.  Doty was not even present during this incident.  Haluda drafted a memorandum to Nagy on the same day, recounting the incident with Davis.

Less than a week later, on April 16, 2002, Nagy terminated Doty.  At the time of the termination Nagy was aware of the fact that Doty had filed two charges of discrimination with the EEOC.  Nagy testified that Doty was terminated for lack of performance, unwillingness to do

the job, and because a family member threatened some personnel in the office. But, Nagy admits that the "final straw" which led to Doty's termination was the alleged threat. (Nagy Dep. at 35-36.) Specifically, that Doty had violated the workplace violence policy. (*Id.* at 37.) Haluda also testified that she believed that Doty was terminated as a result of her April 10, 2002, memo to Nagy regarding Doty's sister. (Haluda Dep. at 65.) Nagy never discussed the incident concerning Davis with Doty. Nagy also testified that absent the "workplace violence threats" he was not really sure that he would have fired Doty. (Nagy Dep. at 94.) However, as already described in detail, the only threat that Nagy was aware of was the verbal threat of Doty's sister that she might sue because Doty was defamed and discriminated against. There is no evidence that any threat or act of violence was ever made.

Finally, on April 17, 2002, Doty filed her third EEOC charge alleging that she was terminated in retaliation for the filing of her two previous EEOC charges.

## DISCUSSION

**I.      Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 433 (7th Cir. 1994). The non-moving party must then set forth specific facts showing there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A

genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In making this determination, the Court must draw every reasonable inference from the evidence in the light most favorable to the non-moving party. *Williamson v. Ind. Univ.*, 345 F.3d 459, 462 (7th Cir. 2003) (citation omitted); *Haefling v. United Parcel Serv., Inc.,* 169 F.3d 494, 497 (7th Cir. 1999).  The non-moving party must support its contentions with admissible evidence and may not rest upon mere allegations in the pleadings or conclusory statements in affidavits.  *Celotex,* 477 U.S. at 324.

## II.     Retaliation

 Under Title VII, unlawful retaliation occurs when an employer takes an adverse employment action against an employee for opposing impermissible discrimination. *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 751 (7th Cir. 2002) (citing 42 U.S.C. § 2000e-3).  A plaintiff has two means of proving Title VII retaliation: the "direct method" and the "indirect burden-shifting method."  *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003).

Doty argues that she has sufficient evidence to proceed under the direct method of proof. Specifically, in order to defeat a summary judgment motion on a Title VII retaliation claim under the direct method of proof a plaintiff must establish: "(1) a statutorily protected activity; (2) an adverse employment action taken by the employer; and (3) a causal connection between the two."  *Davis v. Con-Way Transp. Cent. Express, Inc*., 368 F.3d 776, 786 (7th Cir. 2004).  Direct evidence, according to *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002), is "…(evidence that establishes without resort to inference from circumstantial

5

evidence) that [plaintiff] engaged in protected activity (filing a charge of discrimination) and as a result suffered the adverse employment action of which he complains."

Here, Doty has direct evidence of retaliation.  First, Doty clearly engaged in a statutorily protected activity at the time of her termination – she had already filed two charges of discrimination with the EEOC – one in December 2001, and the second in March 2002, approximately one month prior to her termination.  Second, there was an adverse employment action taken by her employer, she was fired.  Third, by the Defendants' own admission, Doty was terminated, at least in part, because her sister – Kerry Davis – informed Defendants that Doty was going to be suing them because she was discriminated against because of her race.  This raises a question of material fact concerning a causal connection between Doty engaging in protected activity and her termination.

Nagy testified that the "final straw" which led to Doty's termination was the alleged "threats" by Doty's sister.  Nagy also testified that absent the "workplace violence threats" he was not really sure that he would have fired Doty.  However, Doty's sister did not make any alleged threat of physical violence and did not touch anyone.  She only threatened to sue.

Further, the timing of Doty's termination also raises an inference of retaliation.  She filed her second EEOC charge alleging retaliation in March 2002, and was fired approximately four weeks later on April 16, 2002.  Accordingly, because Doty has presented the Court with at least some evidence of retaliation under the direct method, Defendants' motion for summary judgment on this claim must be denied.

**III.     Race Discrimination**

Defendants also seek summary judgment on Doty's claims of race discrimination. Doty alleges that her employment was terminated in violation of Title VII, Section 1981, and Section 1983 because of her race.[2]

A plaintiff may establish discrimination through either the "direct" or "indirect" method of proof. *See Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 982 (7th Cir. 1999). In this case, it is undisputed that Doty has no direct evidence of discrimination and has chosen the "indirect" method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

To defeat a motion for summary judgment in a case arising under Title VII using the indirect method, a plaintiff must first establish a *prima facie* case of discrimination by showing that: (1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) she was treated less favorably than one or more similarly situated employees outside of her protected class. *See Peters v. Renaissance Hotel Operating Co.,* 307 F.3d 535, 547 (7th Cir. 2002); *Stockett v. Muncie Ind. Transit Sys.,* 221 F.3d 997, 1001 (7th Cir. 2000). If a plaintiff establishes a *prima facie* case, then the burden shifts to the employer to present evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 876 (7th Cir. 2002). If such reason is supplied, then the employee must show that the stated reason is merely a pretext for unlawful discrimination. *Id.*

---

[2] Section 1981, Section 1983, and Title VII claims are analyzed in the same manner. *See*, *e.g.*, *Alexander v. Wis. Dept. of Health and Family,* 263 F.3d 673, 681-82 (7th Cir. 2001) (Section 1981); *Nanda v. Bd. of Trustees of Univ. of Ill.*, 303 F.3d 829-30 (7th Cir. 2000) (Section 1983).

7

There is no dispute that Doty is a member of a protected class and that she suffered an adverse employment action. Defendants contend that Doty cannot establish the second and fourth prongs of the *prima facie* case.

When a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner (i.e., applied expectations to similarly situated white employees in a more favorable manner), the second and fourth prongs of *McDonnell Douglas* merge-- allowing the plaintiff to establish a prima facie case, stave off summary judgment for the time being, and proceed to the pretext inquiry. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319 (7th Cir. 2002). This is what Doty argues should occur in this case.

Doty has introduced evidence that Stopczynski, a similarly situated white employee, was treated more favorably than she was. For example, Stopczynski was compensated better than Doty for the same position. Even though Stopczynski had performance problems which were documented in the same manner as Doty's she was never suspended or terminated. In fact, no employee – beside Doty – was ever terminated by Nagy. Indeed, Haluda testified that she believed that both Doty and Stopczynski should have been terminated.

Taking the entire record into account, the Court finds that Doty has produced sufficient evidence to raise an inference that the Auditor's office applied its employment expectations in a disparate manner. Specifically, the Court finds that there are questions of material fact concerning whether: (1) was Doty meeting the legitimate expectations of her employer at the time of her termination and (2) whether Stopczynski treated more favorably than Doty. The analysis then must proceed to the pretext inquiry.

To show pretext, Doty bears the burden of demonstrating that the Auditor's Office ostensible justification for its decision is unworthy of credence.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 395 (7th Cir. 1998); *see also Sanchez v. Henderson*, 188 F.3d 740, 746 (7th Cir. 1999) (stating that a plaintiff can show pretext "by showing that the employer's proffered reason was not worthy of belief"), *cert. denied*, 528 U.S. 1173 (2000).  Furthermore, the Seventh Circuit has held that if the plaintiff "offers specific evidence from which the finder of fact may reasonably infer that the proffered reasons do not represent the truth, the case then turns on the credibility of the witnesses."  *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001) (quoting *Collier v. Budd Co.*, 66 F.3d 886, 893 (7th Cir. 1995)).

Here, one of the Defendants' proffered reasons for Doty's termination – that she violated the workplace violence policy – is suspect for a number of reasons.  First, Doty never threatened anyone or violated the workplace violence policy.  Second, Doty's sister never threatened anyone with violence.  Instead, she only threatened to sue for defamation and discrimination.  Regardless, Nagy never spoke with Doty about her sister's alleged threats before terminating her.  The Court has serious questions concerning whether this explanation is worthy of belief.  Therefore, Defendants motion for summary judgment on Doty's race discrimination claim is denied.

## IV.     Additional Constitutional Claims

Title VII liability runs only against "employers" and not individuals.  *Williams v. Banning*, 72 F.3d 552, 553 (7th Cir. 1995).  St. Joseph County Auditor's Office, and not Nagy individually, was Doty's employer.  Her Title VII claim against Nagy therefore must fail.

Doty's Section 1981 and 1983 official capacity claims against Nagy also cannot survive summary judgment because they are duplicative of her claims against the St. Joseph County Auditor's Office. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Official capacity suits represent only another way of pleading an action against an entity of which an officer is an agent. *Id.*

Finally, Doty's Section 1983 claim against the St. Joseph County Board of Commissioners, in their official capacity, fails as a matter of law. Official capacity claims require proof that the alleged violations were caused by policy or custom of the local government entity. *Harris v. City of Marion, Ind.*, 79 F.3d 56, 58 (7th Cir. 1996). There is no evidence that the Board of Commissioners caused any actionable wrong pursuant to a policy or custom. Therefore, summary judgment must be entered against Doty on this portion of her claims.

**CONCLUSION**

For the foregoing reasons, the Defendants' Motion for Summary Judgment [Doc. 21] is hereby **DENIED** with respect to Doty's retaliation and discrimination claims and is **GRANTED** in all other respects. Specifically, Defendant Joseph Nagy is entitled to summary judgment on Doty's Title VII against him, to the extent that she asserted one. Defendant Nagy, in his official capacity, is also entitled to summary judgment on Doty's Section 1981 and Section 1983 claims against him. Finally, the St. Joseph Board of Commissioners is entitled to summary judgment on Doty's Section 1983 claim against it. All dates are hereby **REAFFIRMED**.

**SO ORDERED**.

ENTERED: April 26, 2005

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
